IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carlos Antonio Rodriguez, | No. CV 08-8056-PCT-MHM (ECV) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Dora B. Schriro, et al., | |
| Respondents. | |

TO THE HONORABLE MARY H. MURGUIA, UNITED STATES DISTRICT JUDGE:

## BACKGROUND

Pending before the court is a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner Carlos Antonio Rodriguez. Doc. #1. Pursuant to a plea agreement, Petitioner pled guilty on January 9, 2004, to one count of first degree murder, a class one felony under Arizona law. Doc. #17, Exh. E, F.[1] On February 19, 2004, following an aggravation and mitigation hearing, Petitioner was sentenced to the maximum term of natural life in prison. Doc. #17, Exh. R.

---

[1] Like Petitioner, Petitioner's brother and co-defendant was charged with first degree murder and conspiracy to commit first degree murder. Doc. #17, Exh. B. The brother, however, pled guilty to a lesser charge pursuant to a "package deal" plea agreement. Doc. #1, Exh. I.

On April 15, 2004, Petitioner filed a Notice of Post-Conviction Relief under Rule 32 of the Arizona Rules of Criminal Procedure. Doc. #17, Exh. S. On September 28, 2004, through counsel, Petitioner filed a Petition for Post Conviction Relief and Supporting Exhibits. Doc. #17, Exh. T. Among the claims raised in the petition was that Petitioner's right to due process was violated when he was coerced into entering a guilty plea pursuant to a "package plea" agreement involving his brother/co-defendant. Doc. #17, Exh. T at 1. After briefing was completed, the trial court held an evidentiary hearing on August 8, 2005. Doc. #17, Exh. Z, AA. At the end of the hearing, the court denied Petitioner's request to amend his petition for post conviction relief to add a claim of ineffective assistance of counsel at the plea agreement stage. Id. The court, however, granted Petitioner permission to file another petition for post-conviction relief raising that claim. Id.

In an order filed September 30, 2005, the trial court denied the first petition for post conviction relief. Doc. #17, Exh. BB. The court found the Petitioner's plea agreement was not a "package deal" or a "contingency plea," and even if it was, the court found it was not unlawful and did not render the guilty plea involuntary. Id. Petitioner filed a Petition for Review in the Arizona Court of Appeals on February 9, 2006, in which he raised the involuntary guilty plea claim. Doc. #17, Exh. CC. Subsequently, on September 15, 2006, the trial court denied Petitioner's second petition for post conviction relief that alleged ineffective assistance of counsel. Doc. #17, Exh. DD. Petitioner then filed a Petition for Review regarding the second petition. Doc. #17, Exh. EE. On October 30, 2006, pursuant to Petitioner's motion, the Arizona Court of Appeals consolidated the two petitions for review. Doc. #17, Exh. FF.

On January 17, 2007, the Court of Appeals denied review. Doc. #1, Exh. I. The Court found that although the trial court abused its discretion when it found that Petitioner's plea agreement was not contingent or part of a "package deal," the plea was still voluntary. Id. Petitioner's subsequent Petition for Review to the Arizona Supreme Court was denied on May 22, 2007. Doc. #17, Exh. GG.

On May 5, 2008, Petitioner filed his habeas petition in this court. Petitioner alleges two grounds for relief: 1) that his guilty plea violated the Due Process Clause in that it was involuntary and the result of coercion due to the state's insistence on a "package deal"; and 2) that during the plea negotiations and change of plea hearing, his attorney provided ineffective assistance of counsel. Judge Murguia screened the petition and directed Respondents to file an answer. Doc. #4. Respondents filed an Answer to Petition for Writ of Habeas Corpus on November 3, 2008. Doc. #16. Respondents filed a Supplemental Answer on December 30, 2008. Doc. #25. Petitioner then filed a Reply to Answer and Supplemental Answer on May 6, 2009. Doc. #28.

Petitioner agreed to the following factual basis presented by the prosecutor at the change of plea hearing in state court:

> [O]n January 1st, 2003, during the early morning hours the defendant Vicente Alonzo and Andrew Martinez were involved in a minor physical altercation in the parking lot behind the Enterprise Rental Car. That's located in the area 110 North Humphrey here in Flagstaff, Coconino County, Arizona.
>
> During the altercation the defendant Carlos Rodriguez was called at his mother's home where he was staying. At that time Carlos Rodriguez and his girlfriend Gabriel Mohr left the home and headed down to the area where the altercation was occurring behind the Enterprise Rental Car. Carlos Rodriguez at that time had Gabriel Mohr carry an aluminum baseball bat with her. When they arrived on scene, Carlos Rodriguez took the aluminum baseball bat from Gabriel Mohr.
>
> Vicente Alonzo was standing approximately three to five feet from Andrew Martinez at that time, and there was some sort of verbal altercation still occurring between those two individuals. Carlos Rodriguez approached Andrew Martinez and was making statements to him in a loud voice, obviously aggressive statements and struck Andrew Martinez – at that time it appears to be in the stomach or side with the aluminum baseball bat, and Andrew Martinez fell to the ground.
>
> Two independent witnesses, Melissa Reilly and Gabriel Mohr saw this altercation take place. As Andrew Martinez hit the ground, Vicenti Alonzo was standing still within three to five feet from Andrew Martinez. The two young women that were there heard additional blows being inflicted upon Andrew Martinez and could hear Carlos Rodriguez yelling profanities at that time.
>
> Those two young women left the area and went to the area of Bank One ATM. Carlos Rodriguez and Vicenti Alonzo followed after them some possibly five minutes later. At the area of the Bank One ATM, Carlos Rodriguez was heard to say, "Did you hear that head crack?" And, "I think I killed him."

He then pulled his brother Vicenti aside and a conversation took place between the two of them. Gabriela Mohr heard a statement of "Let's go back."

She could not attribute which person made that statement. Both Carlos Rodriguez and Vicenti Alonzo returned to the area of the parking lot behind the Enterprise Rental Car. Once they got back there, Andrew Martinez was not in the original area where he had been assaulted.

Physical evidence and expert testimony at trial would show blood trails that were in that area. It would show Andrew Martinez had moved in a direction towards a dumpster in that area. And according to the expert testimony that the State would provide it is the most likely situation that although seriously injured, Andrew Martinez moved on his own power over to the area in the dumpster.

Additional physical evidence at trial would show that at the time they located Andrew Martinez, Carlos Rodriguez again attacked Andrew Martinez striking him as many as five additional blows. Those blows according to the medical examiner were focused on the area of Andrew Martinez' head causing substantial trauma to his head, numerous fractures on Andrew Martinez' skull and face. They then left the area.

I add, Your Honor, that Vicenti Alonzo did return to the area. And the evidence at trial would indicate that the two individuals located the body. At no time from the initial attack or in the second attack did Vicente Alonzo intervene and try to stop his brother Carlos Rodriguez from committing this attack on Andrew Martinez.

The two individuals then left the scene and some hours later Andrew Martinez was found deceased approximately eight to nine feet from the area of the dumpster.

Doc. #25, Exh. 1 at 11-14.

## DISCUSSION

Respondents argue in response to the petition that Petitioner has not demonstrated the state courts' denial of his claims violate clearly established federal law as determined by the United States Supreme Court. They contend that because Petitioner has not satisfied the standard for federal habeas relief, the petition must be denied and dismissed with prejudice.

**A.**     **AEDPA Standard of Review**

Under the AEDPA[2], a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the State court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); see Williams v. Taylor, 529 U.S. 362, 412-413 (2000) (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard of review). A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." Taylor, 529 U.S. at 405-06. "A state court's decision can involve an 'unreasonable application' of Federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002). Thus, the "unreasonable application" clause requires the state court's application of Supreme Court law to be more than incorrect or erroneous; it must be objectively unreasonable. Lockyer v. Andrade, 538 U.S. 63, 75 (2003). "When applying these standards, the federal court should review the 'last reasoned decision' by a state court ...." Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

"Clearly established Federal law" in § 2254(d)(1) refers to the holdings of the Supreme Court's decisions (not dicta) in effect at the time the relevant state court decision is issued. Lockyer, 538 U.S. at 71-72. "A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of this Court." Thaler v. Haynes, 130 S.Ct. 1171 (2010)

---

[2] Antiterrorism and Effective Death Penalty Act of 1996.

**B.     Ground One**

Petitioner alleges in his first claim for relief that his guilty plea was the result of coercion based on the State's insistence on a "package deal" plea agreement. He contends that this coercion rendered his plea involuntary and violated the Due Process Clause. Petitioner claims that he "was coerced by his love for his brother and fear that absent the contingency plea his brother would get no plea agreement at all." Doc. #1 at 27. Petitioner contends that the state court unreasonably applied the governing principles set forth by well-established United States Supreme Court law, and that he is, therefore, entitled to habeas relief.

To determine the validity of a guilty plea, the court must ascertain whether the plea represented a voluntary and intelligent choice among the alternative courses of action open to the defendant. Hill v. Lockhart, 474 U.S. 52, 56, 106 S. Ct. 366 (1985). A defendant's contemporaneous statements regarding his understanding of the plea agreement carry substantial weight in determining the voluntariness of a guilty plea. United States v. Mims, 928 F.2d 310, 313 (9th Cir. 1991). The court may properly credit a defendant's testimony at a hearing regarding entry of a guilty plea over any subsequent declarations to the contrary. See United States v. Castello, 724 F.2d 813, 815 (9th Cir. 1984).

Regarding contingent or "package deal" plea agreements, Petitioner has presented no United States Supreme Court case law demonstrating that such agreements violate the Due Process Clause, and the court is aware of none. See Castello, 724 F.2d at 814 ("The Supreme Court has reserved judgment on the constitutional implications" of "package deal" plea agreements.). In Bordenkircher v. Hayes, 434 U.S. 357, 365 n.8 (1978), the Court, in dicta, simply cautioned that "a prosecutor's offer during plea bargaining of adverse or lenient treatment for some person *other* than the accused . . . might pose a greater danger of inducing a false guilty plea by skewing the assessment of the risks a defendant must consider." The Court presented no standard or analysis of any kind for determining when a contingent plea might be unduly coercive and a violation of due process. See id.

The last reasoned decision in the state court, and thus the only one to which the federal habeas standard is applied, is the Arizona Court of Appeals Order filed on January 17, 2007. Doc. #1, Exh. I. The Court of Appeals found that Petitioner's plea agreement was contingent and part of a "package deal." Id. The Court determined, however, that the plea was still voluntary. Id. Applying the factors set forth in State v. Solano, 150 Ariz. 398, 724 P.2d 17 (1986), an Arizona Supreme Court case, the Court of Appeals found that the plea agreement was not coercive and that the prosecutor's motive for offering the agreement "was legitimate and free of any improper extrinsic forces." Id. The Court further explained:

> [W]hen petitioner pled, he became 'an adverse witness on behalf of his codefendant [brother], free of jeopardy.' The record fully supports that this was the reason the prosecutor offered petitioner's brother a favorable plea agreement.

Id.

Petitioner contends that the Arizona trial court and the Court of Appeals "incorrectly applied well established United States Supreme Court law" to his claims. Doc. #1 at 29. But he fails to explain what well established Supreme Court law he is referring to and how the state courts misapplied it. Instead, Petitioner argues at length, in the petition and the reply, about how the Arizona Court of Appeals decision was "an incorrect and incomplete application" of State v. Solano, an Arizona case. Whether the state Court of Appeals misapplied an Arizona Supreme Court decision is irrelevant to federal habeas review. See 28 U.S.C. § 2254(d). Petitioner's analysis of the Solano factors does nothing to show that the Court of Appeals' decision was contrary to or an unreasonable application of clearly established United States Supreme Court law.

To the extent Petitioner is arguing the Court of Appeals decision violates the general requirement that a plea be voluntary and intelligent as set forth in Hill v. Lockhart, supra, and Boykin v. Alabama, 395 U.S. 238 (1969), the analysis fails. First, the analysis does not explain how the Court of Appeals decision is contrary to or an unreasonable application of Hill or Boykin. Second, even if it did, the facts of this case do not support such a determination.

1    When Petitioner and his co-defendant brother entered their guilty pleas on January 9, 2004, Petitioner was clearly aware that his agreement exposed him to life in prison while his brother's agreement exposed him to a maximum sentence of 3.75 years. Doc. #25, Exh. 25 at 4-6. Petitioner stated that his lawyer explained the plea agreement to him and that he understood it. Id. at 7. Petitioner said he understood all the rights he was giving up by pleading guilty. Id. at 7-10. When asked if anyone used force or threats to get him to plead guilty, Petitioner responded, "No." Id. at 10. Petitioner also stated that no other promises were made to him besides what was discussed at the hearing. Id. at 10-11. After his brother pled guilty to attempted aggravated assault, Petitioner pled guilty to first degree murder. Id. at 23. The trial court then found that Petitioner knowingly, intelligently and voluntarily entered his guilty plea and that there was a sufficient factual basis. Id. at 25.

At the sentencing hearing, Petitioner's lawyer explained that Petitioner pled to the charge "in order to spare his brother and because he wanted to take responsibility and not have the chance that his brother could be convicted of first-degree murder as well." Doc. #25, Exh. 3 at 183. In addition, the trial court found that Petitioner's motivation in pleading to the charge was to save his brother and that he obtained a benefit from that. Id. at 190. At no time during the change of plea or sentencing hearing did Petitioner or his attorney claim coercion from the plea deal that allowed his brother to plead to a less serious offense in return for his guilty plea to first degree murder. Nothing at either hearing would support such a finding.

The Arizona Court of Appeals ruled that there was sufficient support in the record to determine that the guilty plea was voluntary. Petitioner has failed to demonstrate that this ruling was contrary to or an unreasonable application of Hill or Boykin. Having failed to satisfy the standard for federal habeas relief, the court will recommend that Petitioner's first claim be denied.

**C.    Ground Two**

In his second claim, Petitioner argues that he received ineffective assistance of counsel in violation of the Sixth Amendment during the plea agreement stage. Petitioner claims that

his lawyer "erroneously advised him that the State was insisting that he enter a 'contingency plea' or 'package plea' agreement involving his brother/co-defendant and he was further coerced by his trial counsel as a result of her advise [sic] to enter a guilty plea." Doc. #1 at 34. Petitioner contends that his lawyer erroneously told him that if he pled guilty to first-degree murder, the murder charge against his brother would be dropped and the brother would be allowed to plead guilty to aggravated assault. Id. at 38. Petitioner claims that his lawyer coerced him into accepting the plea by presenting the agreement as a package deal.[3]

On this issue, the Arizona Court of Appeals ruled that because it concluded "the plea was conditional, it cannot be said that petitioner's counsel was ineffective for advising petitioner as such." Doc. #1, Exh. I. The Court further explained that "because the plea was part of a 'package deal,' petitioner's counsel correctly advised petitioner and therefore the petition was subject to summary dismissal." Id.

The two-prong test for establishing ineffective assistance of counsel was established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on an ineffective assistance claim, a convicted defendant must show: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 687-88. There is a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. Strickland, 466 U.S. at 689-90. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689.

---

[3] During an evidentiary hearing on Petitioner's first petition for post-conviction relief, the prosecutor in the case insisted that the plea agreement was not a contingency agreement. Doc. #17, Exh. Z at 140-146. Thus, Petitioner contends that because his lawyer told him otherwise, he received inaccurate advice and ineffective assistance of counsel.

- 9 -

The Strickland test also applies to challenges to guilty pleas based on ineffective assistance of counsel. Hill, 474 U.S. at 58. A defendant who pleads guilty based on the advice of counsel may attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel fell below the level of competence demanded of attorneys in criminal cases. Id. at 56. To satisfy the second prong of the Strickland test, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

Petitioner's analysis of his ineffective assistance claim assumes that his lawyer's advice regarding the conditional nature of the plea agreement was inaccurate. As the Arizona Court of Appeals determined, however, it was not inaccurate. Thus, the Court of Appeals found no deficient performance. Petitioner has done nothing to demonstrate how the Court of Appeals decision is contrary to or an unreasonable application of Strickland or Hill.

In his reply, Petitioner appears to abandon his claim that his lawyer's advice regarding the contingent nature of the plea agreement constituted ineffective assistance of counsel.[4] Regardless, Petitioner has not satisfied the standard for habeas relief on this claim. The court will, therefore, recommend that the claim be denied.

**C.     Conclusion**

Having determined that Petitioner's claims should be denied on their merits, the court will recommend that the petition for writ of habeas corpus be denied and dismissed with prejudice.

`**IT IS THEREFORE RECOMMENDED:**

That the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. #1) be **DENIED** and **DISMISSED WITH PREJUDICE**;

---

[4] Petitioner refers to other allegedly inaccurate advice and coercion from his lawyer but he does so in the context of analyzing the State v. Solano factors, not the ineffective assistance of counsel claim. Doc. #28 at 8-11.

**IT IS FURTHER RECOMMENDED**:

That a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgement entered pursuant to the Magistrate Judge's recommendation. See Fed. R. Civ. P. 72.

DATED this 22nd day of March, 2010.

Edward C. Voss
United States Magistrate Judge